UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AVEL IVANOVICH REVENKO,<br><br>      Petitioner,<br><br>  v.<br><br>PAMELA BONDI, et al.,<br><br>      Respondent. | CASE NO. 2:25-cv-02149-RAJ-BAT<br><br>**REPORT AND RECOMMENDATION** |

  The Court recommends Petitioner's 28 U.S.C. § 2241 petition for writ of habeas corpus be **GRANTED** and Respondents be **ORDERED** to: (1) release him from immigration detention, and (2) not remove him to a third county in an unconstitutionally punitive manner and provide him notice and an opportunity to respond to any third country removal attempt in a reopened removal proceeding.

## BACKGROUND

  Petitioner entered the United States in 1995. After several criminal convictions, he was placed into immigration detention on April 11, 2023. On May 16, 2024, an Immigration Judge issued a final order of removal to either Moldova or Russia. Because he was not removed, Petitioner filed a 28 U.S.C. § 2241 habeas petition on March 27, 2025. *See Revenko v. Bond*, 2:25-cv-00549-TL (W.D. Wash. 2025). The Honorable Tana Lin adopted the report and

REPORT AND RECOMMENDATION - 1

recommendation which indicated as of March 5, 2025, ICE's efforts demonstrate removal will occur in the reasonably foreseeable future; specially the Moldovan Consulate on May 5, 2025 indicated it would issue Petitioner a travel document. Judge Lin accordingly denied and dismissed Petitioner's March 2025 habeas petition on September 8, 2025.

Despite finding in September 2025 Petitioner would be removed in the reasonably foreseeable future, he remained in custody. Petitioner thus filed the instant habeas petition on October 30, 2025. In response, Respondents maintain Petitioner's removal is reasonably foreseeable because "the Moldovan Consulate has informed ERO that they will issue Petitioner a travel document which they receive all requested documentation." Dkt.10 at 7.

## DISCUSSION

Under 28 U.S.C. § 2241, this Court has jurisdiction over challenges to a noncitizen's detention before removal. *Zadvydas v. Davis*, 533 U.S. 678 (2001). This Court lacks jurisdiction over final orders of removal. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1005 (W.D. Wash. 2019). The Court retains jurisdiction over Petitioner's habeas petition, which does not challenge the order of removal but his detention and attempts to remove him to a third county. *Id.*

A. ***Zadvydas*** **Claim**

Plaintiff contends *Zadvydas v. Davis*, 533 U.S. 678 (2001) compels release because his removal is not reasonably foreseeable and his continued detention violates the Due Process Clause of the Fifth Amendment. Respondents disagree and claim Petitioner's removal is reasonably foreseeable. The parties agree Petitioner is detained under 8 U.S.C. § 1231. Under § 1231, the government must detain a noncitizen during the 90 days following the entry of the removal order, during which time ICE attempts removal. 8 U.S.C. § 1231(a)(2)(A). As Respondents detained Petitioner in 2023, the 90-day removal period has long expired. After 90

days, Respondents may detain the noncitizen or release the noncitizen under supervision. § 1231(a)(6).

While the government may detain a noncitizen, § 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. 678 at 689. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Due process requires a noncitizen be detained under § 1231 no longer than "a period reasonably necessary to bring about . . . removal from the United States." *Id.* at 689. Detention is presumptively reasonable for six months after the removal period. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

The record shows since issuance of a final order of removal in 2024, Respondents have been working on obtaining travel documents to remove Petitioner. Judge Lin earlier found in September 2025 that Respondents' recent efforts to obtain travel documents in May 2025 showed a reasonably foreseeable likelihood Petitioner would be removed. But as of November 14, 2025, Respondents had not completed an application for travel documents that could be submitted to the government of Moldova. *See* Dkt. 10 at 6-7. Given Respondents' representations about a travel document, Petitioner moved for discovery. In their December 5, 2025 opposition to the motion, Respondents do not aver an application for a travel document had been completed or submitted to the government of Moldova. Instead, they contended the Court should not order discovery, and at most should require the government to submit a declaration "reflecting Moldova's agreement to repatriate Petitioner." Dkt. 17 at 4.

REPORT AND RECOMMENDATION - 3

Thus, the record shows no travel document has been completed and submitted to Moldova and no timeframe for the completion of the steps needed to submit a travel document request to Moldova has been proffered. It is undisputed that although Petitioner has been in custody since 2023, and Respondents started the process of obtaining a travel document in 2024, Respondents have not obtained travel documents to effect removal.

In making an individualized determination, the Court finds the record establishes Petitioner has met his burden to show good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future. *See e.g. Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (removal not reasonably foreseeable where government had "not demonstrated . . . that any travel documents are in hand, nor have they provided any evidence, or even assurances from the [foreign] government, that travel documents will be issued in a matter of days or weeks or even months"); *Singh v. Whitaker*, 362 F. Supp. 3d 93, 101–02 (W.D.N.Y. 2019) (removal not reasonably foreseeable where government had no specific timeframe for removal and no travel document despite frequent follow-ups with the consulate); *Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189-90 (W.D. Wash. 2006) (finding removal not likely in reasonably foreseeable future when noncitizen detained for eight months and consulate stated only that case was still under review pending a decision).

As Petitioner has met his initial *Zadvydas* burden, the burden shifts to Respondents to rebut Petitioner's showing. Respondents fail to do so. Respondents submitted the "declaration" of a Deportation Officer in support of its argument the Court should deny the writ. Even assuming the Deportation Officer's declaration is true, Respondents' contention they are actively working to obtain a travel document, and Moldova has indicated it will issue a travel document is essentially the same contention Respondents made in response to Petitioner's first habeas

REPORT AND RECOMMENDATION - 4

petition. But the proof is in the pudding and despite Respondents' claim they believe there is a significant likelihood of Petitioner's removal in the foreseeable future, a travel document application has not even been completed and Petitioner remains detained.

That removal is not reasonably foreseeable is buttressed by the fact Petitioner has been in custody since 2023 and Respondents have been working on obtaining travel documents since 2024 and have failed to do so. Respondents' claim they are actively working on procuring a travel document is a statement applicable to all removal cases, and thus this fact alone does not show there is a reasonable likelihood of removal in the foreseeable future.

The Court thus concludes Respondents' representations are insufficient to rebut Petitioner's showing. "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen*, 2025 WL 2419288, at *16; *see Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006). As Respondents fail to rebut Petitioner's showing, he is entitled to *Zadvydas* habeas relief.

### B.     Third Country Removal

Petitioner contends Respondents should be barred from removing him to a third country because such removal is impermissibly punitive; additionally, he contends if Respondents pursue removal to a third country, he is entitled to certain procedural protections before such removal occurs. There is no dispute Respondents possess the authority to remove Petitioner to a third country. The dispute revolves around the manner in which third country removal might occur. Petitioner asks for notice and an opportunity to respond if the government should attempt third country removal that includes (1) reopening Petitioner's Section 240 removal proceedings, so an immigration judge may designate a specific country for removal, and (2) providing him with an

REPORT AND RECOMMENDATION - 5

opportunity to present a claim for deferral of removal as to that country under the Convention Against Torture (CAT).

Respondents argue Petitioner presents nothing showing Respondents intend to remove his to a third county and his contention should thus be dismissed. However, Respondents present nothing showing Petitioner is not entitled to the due process and statutory protections as to third country removals. And while Respondents contend there is nothing showing an intent to remove Petitioner to a third country, they do not represent they will never seek third country removal.

The issue of third country removal is not academic. The Court takes notice of its own records that Respondents have taken the position "DHS has the authority to effect third country removal without the involvement of an immigration judge, without reopening removal proceedings and without giving a noncitizen an opportunity to present a CAT claim 'within 24 hours after the third country agrees to accept [him] and a Notice of Removal is served." *See Ghasedi v. Wamsley*, 2:25-cv-01984-RSM (2025), Response, Dkt. 6 at 11-12. However, while DHS has the authority to designate a country of removal, "it must exercise that authority in an appropriate way." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). It must comply with due process. Here, that means if DHS seeks to remove Petitioner to a third country, it must move to reopen Section 240 removal proceedings, and a hearing must be held before an immigration judge so the petitioner can apply for relief as to the specific country of removal.

The Court accordingly finds Petitioner must be given sufficient notice of a third country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation. *See Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288 at 18 (W.D. Wash. Aug. 21, 2025) (citation omitted). Due process includes the right to "a full and fair hearing, an impartial decisionmaker, and

REPORT AND RECOMMENDATION - 6

evaluation of the merits of his or her particular claim." *Id.* The due process clause requires the government to "provide a meaningful opportunity to be heard on asylum and withholding claims." *Id.* These requirements "flow directly from binding Ninth Circuit precedent," and to the extent ICE policy contradicts them, it is unlawful. *Id.* at *19 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.").

In *Aden v. Nielsen*, 409 F. Supp. 3d 998, (W.D. Wash. 2019)., the petitioner was ordered to be removed to Kenya; however, after Kenya denied his travel document request, ICE scheduled his removal to Somalia without notice or an opportunity to be heard. *Id.* at 1003. The court held due process required that the removal proceedings against the petitioner be reopened and a hearing held before the immigration judge so that the petitioner could apply for relief to Somalia.

The Court also notes if the government moves forward with removal to a third country without reopening removal proceedings, disregarding the requirements of due process as laid out in *Nguyen*, 2025 WL 2419288, and the Ninth Circuit precedent upon which it relies, Petitioner would be free to move for injunctive relief, demonstrating his entitlement to an injunction, and the likelihood of irreparable harm.

The Court accordingly recommends the habeas petition be **GRANTED** and Respondents be **ORDERED** to:

(1) Release Petitioner from immigration detention on appropriate conditions no later than **24 hours** following adoption of this recommendation.

(2) Respondents shall file with the Court a notice confirming Petitioner has been released from immigration within **48 working hours** of the adoption of this recommendation.

(3) Respondents shall provide Petitioner three working days **(72 hours) notice** and

the opportunity to respond to any third country removal attempt by providing a reopened removal proceeding before an immigration judge.

  (4) The motion to compel discovery should be stricken as moot.

  (4) The clerk shall provide copies of this order to all counsel.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **January 12, 2026.** The Clerk should note the matter for **January 13, 2026**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. The failure to timely object may affect the right to appeal.

DATED this 29th day of December, 2025.

            _____
            BRIAN A. TSUCHIDA
            United States Magistrate Judge